# Exhibit A

9589 0710 5270 0014 9381 50

Nancy & Ronald Rothman
1115 Route 9 South
Marmora, NJ, 08223
609-234-9232 or 609-234-7900

**JOINT MUNICIPAL COURT HAMMONTON**
**ATLANTIC COUNTY**

| | |
|---|---|
| **STATE OF NEW JERSEY,** | Court Case No: **N/A** |
| **Plaintiff,** | Cases: Violation Numbers |
| vs. | **0113-S-2025-023692 & 023693** |
| **NANCY ROTHMAN,** | **Enforcement Action / Venue** |
| **Defendant.** | |

**NOTICE OF MOTION & CERTIFICATION TO DISMISS WITH PREJUDICE THE ABOVE-NAMED ACTIONS AND OR ALL PENDING INVESTIGATIVE ACTIONS RELATED TO THIS ACTION:**

1. ALL ILLEGAL AND NOT CONSTITITUTIONAL ISSUED ZONING VIOLATIONS IN THE WRONG COURT, VENUE, AND JURISDICTION.
2. PROSECUTOR'S AND ALLEGED ACCUSER'S, ZONING OFFICER'S DESTEFANO'S FAILURE TO APPEAR AT THE DECEMBER 18, 2025, 1 PM HEARING.
3. DEFENDANT'S REQUESTS TO QUASH ALL EVIDENCE PROVIDED BY THE STATE BECAUSE OF UNITED STATES CONSTITUTIONAL, NEW JRSEY CONSTITUTIONAL ENFORCEMENT & AJUDICATION VIOLATIONS.
4. THE ZONING OFFICER DESTEFANO'S UNSIGNED SUMMONS AND COMPLAINT ACCORDING TO NJMUNICIPAL RECORDS SHOWING NO NAME OF OFFICER ISSUING THE SUMMONS AND COMPLAINT, FAILURE TO SERVE SUMMON AND COMPLAINT.
5. THE LEGAL FAILURE OF ZONING OFFICER DESTEFANO'S TO FILE ITS CIVIL OR ADMIISTRATIVE ACTION OR UNSIGNED SUMMONS AND COMPLAINT IN THE COURT OF JURISDICTION IN SUCH MATTERS.
6. ILLEGAL WARANTLESS VIDEO SURVEILANCES FOR YEARS, WHICH WERE FULLY OR PARTIALLY IS BEING USED AS EVIDENCE/PROOF/ SUPPORTING DOCUMENTATION FOR THE ABOVE-NAMED SUMMONS AND COMPLAINTS IN QUASI CRIMINAL ZONING VIOLATION PURSUANT TO THE HAMMONTON PROSECUTOR'S OFFICE.
7. NOTICE OF REMOVAL (SEE SEPARATE ACTION/PAPERS)

1

**Please Take Notice,** that the undersigned Defendant Nancy Rothman moves before this above-named Joint Municipal Court of Hammonton on January 28, 2026, or as soon thereafter for an Order to Dismiss with Prejudice the (see above 1-7 points of reasons) Civil Administrative Violations of Summons Complaint against Defendant Nancy Rothman.

**Please Take Further Notice,** that if one of the opposing party, Zoning Officer and Joint Municipal Prosecutor Office of Hammonton wishes to object, it must do so on or before January 15, 2026, with filing their Objections to this Notice of Motion to Dismiss with Prejudice to this Court and the undersigned.

Respectfully Submitted

Dated: December 26, 2025

*Nancy Rothman* (signature)

Nancy Rothman

**CERTIFICATION IN SUPPORT OF NOTICE OF MOTION TO DISMISS WITH PREJUDICE THE ABOVE-NAMED ACTIONS AND OR ALL PENDING INVESTIGATIVE ACTIONS RELATED TO THIS ACTION:**

1. ALL ILLEGAL AND NOT CONSTITITUTIONAL ISSUED ZONING VIOLATIONS IN THE WRONG COURT, VENUE, AND JURISDICTION.
2. PROSECUTOR'S AND ALLEGED ACCUSER'S, ZONING OFFICER'S DESTEFANO'S FAILURE TO APPEAR AT THE DECEMBER 18, 2025, 1 PM HEARING.
3. DEFENDANT'S REQUESTS TO QUASH ALL EVIDENCE PROVIDED BY THE STATE BECAUSE OF UNITED STATES CONSTITUTIONAL, NEW JRSEY CONSTITUTIONAL ENFORCEMENT & AJUDICATION VIOLATIONS.
4. THE ZONING OFFICER DESTEFANO'S UNSIGNED SUMMONS AND COMPLAINT ACCORDING TO NJMUNICIPAL RECORDS SHOWING NO NAME OF OFFICER ISSUING THE SUMMONS AND COMPLAINT, FAILURE TO SERVE SUMMON AND COMPLAINT.
5. THE LEGAL FAILURE OF ZONING OFFICER DESTEFANO'S TO FILE ITS CIVIL OR ADMIISTRATIVE ACTION OR UNSIGNED SUMMONS AND COMPLAINT IN THE COURT OF JURISDICTION IN SUCH MATTERS.
6. ILLEGAL WARANTLESS VIDEO SURVEILANCES FOR YEARS, WHICH WERE FULLY OR PARTIALLY IS BEING USED AS EVIDENCE/PROOF/ SUPPORTING DOCUMENTATION FOR THE ABOVE-NAMED SUMMONS AND COMPLAINTS IN QUASI CRIMINAL ZONING VIOLATION PURSUANT TO THE HAMMONTON PROSECUTOR'S OFFICE.
7. NOTICE OF REMOVAL (SEE SEPARATE ACTION/PAPERS)

Defendant Nancy Rothman states the following to be true:

Introduction, History, Facts

1. Defendant Nancy Rothman's property is located at 2620 7th Avenue in the Township of Mullica New Jersey Atlantic County, and is considered a National Park, Pinelands, specifically under S. 791 – National Parks and Recreation Act of 1978 (95th Congress

3

1977-78) Title V provides the Establishment of new Areas and Additions to the National Trail System as the Pinelands National Reserve and the Federal Project Review Area New Jersey.

2. The U.S. government did not sell the Pinelands National Park to New Jersey; rather, it was established as the first National Reserve in the United States in 1978 by Congress. The Pinelands National Reserve encompasses approximately 1.1 million acres and is managed by both state and federal entities to protect its unique ecological and cultural resources.

3. Based on the Act of US Congress, the State of New Jersey enacted the National Parks and Recreation Act of 1978 forming the Pinelands Commission located at PO Box 359 New Lisbon, NJ, 08064 under N.J. Admin. Code Section 7:7-9.42 -- Pinelands National Reserve and Pineland Protection Area.

4. Pinelands National Reserve is a national reserve that encompasses much of the New Jersey Pine Barrens. The Pinelands is a unique location of historic villages and berry farms amid the vast oak-pine forests (pine barrens), extensive wetlands, and diverse species of plants and animals of the Atlantic coastal pine barrens ecoregion. It is protected by state and federal legislation through management by local, state, and federal governments and the private sector. The reserve contains Wharton State Forest, Brendan T. Byrne State Forest, Bass River State Forest, Penn State Forest, and Double Trouble State Park, which provide public recreation facilities. Established by Congress in 1978, it is one of the nation's first national reserves, established along with Ebey's Landing National Historical Reserve.[1] Between 170–200 million years ago, the Atlantic

coastal plain began to form. Over millions of years, the rising and falling off the coastline deposited minerals underground, culminating with the end of the last ice age about 12,000 years ago, when plants and trees began growing in what is now New Jersey. Around 10,000 years ago, the ancestors of the Lenape people first inhabited the Pine Barrens. During the 17th century, the area was explored and settled by the Swedish, Dutch, and the English, eventually becoming a part of the U.S. state of New Jersey. Settlers in the region used the area's cedar, oak, and pitch trees, as well as local tar and turpentine, for sawmill, gristmill, and shipbuilding industry.[2][3] The earliest efforts to protect the New Jersey Pine Barrens started in the 1960s. In 1964, the Pinelands Regional Planning Board proposed building a "supersonic jetport" in Ocean County to alleviate flight traffic in the New York metro. This project would develop a satellite city of about 250,000 people and would cover about 50 sq mi (130 km2) in ecologically sensitive parts of the Pine Barrens. The proposed airport generated public opposition and united conservation efforts among farmers, hunters, and environmentalists, who believed that the region was vulnerable to the spread of urban sprawl of the northeastern United States. Due to the large size of the forest, as well as 300 years of human development, the area History 90,530 acres (36,640 ha) federal Established November 10, 1978 Governing body New Jersey Pinelands Commission (http://www.stat e.nj.us/pinelands/) Website www.nps.gov/pine/index.htm (https://www.nps.gov/pine/in dex.htm) Interactive map of Pinelands National Reserve Pinelands map could not be protected and preserved in its entirety. The United States Department of the Interior worked with officials from New Jersey, as well as the state's Senate and Congressional

5

delegation, to develop a development management plan for the Pinelands. The main point of disagreement was the role of federal oversight. On February 24, 1977, Senator Frank Church (D-ID) sponsored the National Parks and Recreation Act of 1978 as an Omnibus bill, which included legislation for the Pinelands National Reserve. New Jersey Representatives Edwin B. Forsythe and William J. Hughes proposed bills H.R. 9539 (https://ww w.govtrack.us/congress/bills/95/hr9535) and H.R. 9539 (http s://www.govtrack.us/congress/bills/95/hr9539) to preserve the Pinelands, which became attached to the omnibus bill in an amendment, sponsored by Congressmen Forsythe, Hughes, and James Florio. The bill passed in the United States Senate on October 27, 1977. A similar bill passed in the House of Representatives on July 12, 1978. After further changes passed by both houses, United States President Jimmy Carter signed the National Parks and Recreation Act of 1978 on November 10, considering it "the most significant conservation legislation to pass the 95th Congress" in his signing statement. The National Parks and Recreation Act of 1978 created the Pinelands National Reserve, which consisted of 1,100,000 acres (450,000 ha) of land in 56 South Jersey municipalities. It was the "largest tract of wild land along the Middle Atlantic Seaboard", according to President Carter's briefing on a September 20, 1978, trip the president took to Atlantic City. Upon the passage of the bill, the Pinelands National Reserve became the country's first National Reserve. The act authorized $23 million for land acquisition of critically important ecological areas. Congress noted the need for local, state, and federal government, along with the private sector, to collectively manage and preserve the water and land resources of the Pinelands, without large-scale

direct federal acquisition of the land. The bill also directed for the Interior Secretary to request the state of New Jersey to establish "a planning entity to a comprehensive management plan for the Pinelands National Reserve." In accordance with the law, New Jersey Governor Brendan Byrne issued an executive order on February 8, 1979, creating the Pinelands Commission. This was affirmed by the New Jersey legislature in the Pinelands Protection Act, which passed in June 1979. The state Pinelands Area omitted 162,000 acres (66,000 ha) of land east of the Garden State Parkway and near the Delaware Bay. Wikimedia | © OpenStreetMap On August 8, 1980, the Pinelands Commission approved the Protection Area, an area of unbroken forest covering 39% of the National Reserve. For the remainder of the reserve, the Pinelands Commission created the Preservation Area on November 21, which consisted of towns, farmlands, and other areas. The plan became effective under state law on January 14, 1981, and two days later, Interior Secretary Cecil D. Andrus approved of the Comprehensive Management Plan. In the same year, Rutgers University established the Rutgers Division of Pinelands Research to support local ecological research. In 1983, the United Nations Educational, Scientific and Cultural Organization ( UNESCO) designated the Pinelands as a reserve, labeling it jointly as the South Atlantic Coastal Plain biosphere, naming it as the Biosphere Reserve/Pinelands National Reserve. In 1988, UNESCO redesignated it as a singular biosphere reserve. Comprehensive Management Plan The text of the National Parks and Recreation Act of 1978 directed for the planning entity to develop a comprehensive management plan (CMP), which became effective on January 14, 1981. The Pinelands Commission set a one-year period from the effective date, with $600,000

provided by the New Jersey Legislature from 1980–1982, for municipalities and counties to conform to the standards of the CMP. In July 1981, New Hanover Township became the first municipality to have its master plan approved by the Pinelands Commission. In January 1982, after the one-year approval period ended, the Pinelands Commission worked with the remaining municipalities and counties updating their master plans. For the towns that refused to comply, the commission announced it would implement the CMP, thus overseeing the local development approval process.

5. In June 1982, Atlantic County sued the Pinelands Commission on behalf of Galloway Township, which wanted to opt out of the CMP; the New Jersey Appellate Court ruled on June 16 on behalf of the Pinelands Commission. A subsequent appeal by the county failed. By December 1983, 70% of the municipalities within the Pinelands National Reserve had revised local master plans and met approval by the Pinelands Commission; by the same time, four out of seven counties developed master plans to focus growth in selected areas. In that same time period, 85% of all approved requests for property development occurred in regional growth areas.

6. The Pinelands National Reserve is administered by the Pinelands Commission, an independent body consisting of 15 members. One member is appointed by the Secretary of the Interior; seven are appointed by the subject to the approval of the Governor of New Jersey New Jersey Senate; one member is appointed by the respective governing bodies of the seven counties in the Pinelands National Reserve: Atlantic, Burlington, Camden, Ocean counties. Cape May, Cumberland, Gloucester and [12] Commission terms are three years in length and include no official compensation. The commission

meets monthly, as do most of its sub-committees. The Battisto River and oak trees in the New Jersey Pine Barrens. Its mission statement indicates its role "is to preserve, protect, and enhance the natural and cultural resources of the Pinelands National Reserve, and to encourage compatible economic and other human activities consistent with that purpose."

7. As above stated, the South New Jersey Pinelands National Reserve are still property of the United States, which did not sell the protected lands to the State of New Jersey, merely only giving New Jersey some Managing Powers. The US Congress also gave no judicial powers to the State of New Jersey, nor S. 791, nor the New Jersey National Parks and Recreation Act of 978.

8. In case of Municipal Ordinances of Zoning Violations within and/or on federally owned and protected area of New Jersey Pinelands, Municipal Courts have no jurisdiction. In fact, the four received 2024 Zoning Violations made by the Zoning Officer Destefano and as a dual state and municipal employee wrote Zoning Violations, which now are completely expunged from the NJ Municipal Court System, because these Civil Administrative Violations were filed in a non-jurisdictional Municipal Court, which determined a fine under a quasi-criminal/criminal court authority under the New Jersey Supreme Court Rules.

9. Article VI, New Jersey Constitution, Section I, 1 state clearly that the judicial power shall be vested in a Supreme Court, a Superior Court, and **other courts of limited jurisdiction**. The other courts and their jurisdiction may from time to time be established, altered or abolished by law.

10. Most state courts are courts of general jurisdiction, meaning a court that can hear almost any state or federal claim, with some exceptions. However, there are also **state courts of limited jurisdiction**. The family names of state courts of limited jurisdiction vary from state to state, such as municipality, county, and justice of peace.

11. Zoning regulations are local laws that govern how land and property can be used within specific geographic areas. These rules are established to promote orderly community growth, protect public health and safety, and maintain property values by preventing incompatible land uses from being adjacent to one another. A zoning violation occurs when a property's use or development does not adhere to these established local zoning ordinances.

12. It is undisputed by legal experts, law professors, legislators that Zoning Ordinances are Civil or Administrative Laws and their legal action is therefore civil.

13. Civil enforcement action means an action with legal consequence taken by the Department based on an alleged violation of the law. Such actions include administrative enforcement proceedings and enforcement adjudication (which is the administrative process undertaken by any component of the Department to resolve the legal rights and obligations of specific parties regarding a particular enforcement issue pending before it)

14. The Mayor and Common Council of the Town of Hamilton enacted Chapter 14 regarding the Joint Municipal Court in compliance with N.J.S.A. 2B:12-1 et seq.

15. A Report of the New Jersey Supreme Court Committee on Municipal Court Operations, Fines and Fees indicates the lawless Municipal Court Operations prior being better regulated by the Article III Branch over Article II Branch Civil Administrative Jurisdictions

of Ordinances and Violations, which today it did not improve especially regarding fines levied against quasi criminal defendants, nor does the Supreme Court and its Committee establish legal jurisdiction over Zoning, Health or other Municipal Ordinance Violations. Traffic Violations are described in detail, while other civil disputes are not specifically named and mention in any enacted law or ordinance.

16. Same applies to Guide 2nd Edition to New Jersey Municipal Courts from the State bar Foundation. No legal reference on jurisdiction regarding Zoning Violation on federally owned New Jersey Pineland. In fact, as above described the New Jersey Commission won a legal dispute against Atlantic County Township of Galloway in 1982 which claimed their own jurisdiction by not filing modified maps to the Commission. Said Appellate Division Decision sets a precedent that New Jersey Townships do not have jurisdiction over Pinelands.

17. It is undisputed that the two Zoning Violations are civil or civil administrative actions by a department. It is undisputed that those two violations are not quasi criminal or criminal of nature, which leads them to exceed the jurisdiction of the Joint Municipal Court of Hammonton, because the nature of zoning violations are departmental administrative actions and so also in many other states are handling such litigations as civil administrative matters under the Article II Branch.

While New Jersey Municipal Courts can hear cases of quasi criminal, criminal, civil and violations of municipal ordinances, it shows and is well established since centuries that zoning disputes are being resolved out of court proceedings. In fact, in Quiet Title Actions, the

11

Chancery Courts have some jurisdiction, but the Rules and Laws are not concise and not perfected and present a grey legal area.

18. Given the nature of the zoning disputes which are civil and administrative under civil court rules, the complainant and the plaintiff must attend their hearings to confirm the prosecution of the matter. With Complainant DeStefano nonattendance as well as the State Prosecutor's unattendance at the last scheduled hearing on December 18, 2025, at 1 pm shows that the State intends not to prosecute the matter and wherefore this matter must be dismissed. It is unjust that a defendant is being issued a Warrant for not attending a hearing and the State can attend whenever it pleases.

19. It emerged through a Report from the New Jersey Supreme Court that Municipal Courts are giving unreasonable monetary judgments to defendants. In this matter the Joint Municipal Court of Hammonton could give a fine for $147,000 or more for each one of the two administrative violations, which is a constitutional violation under the 8th Amendment. In fact, the Prosecutor's Office twice gave notice to the defendant that the fines could exceed a $1000 a day for each day the violation is still open. Said notice and the application of such fines are unreasonable & a direct violation of the 8th Amendment by any court which orders such violations.

20. Defendant reiterates and confirms the Notice of Motion and Certification dated December 6, 2025, to Quash all evidence because of United States Constitutional, New Jersey Constitutional Enforcement & adjudication violations, including Case Law submitted herewith. **Exhibit A**

21. Zoning Violations as the Summons and Complaints are unsigned. In addition, on official court records, specifically NJMCDirect shows and it appears that no officer signed the Summons and Complaint. In such cases the violations are moot and unenforceable.

22. The Zoning Officer DeStefano failed to file the Violations under Article II rather than Article III because its venue of violations is integrated by law as a civil administrative matter under Article II. Destefano has no legal standing and cause of action under Article III as a first instance as a trial court.

23. The property located at the rear of the property at 2620 7th Avenue at Mullica Township New Jersey is surrounded by fences partitions and trees, forest, bushes, which is far away from public access and views, nor accessible by modernized security cameras which for years the area presents a retreat where a person can retire and being out of reach from governmental private intrusion by security cameras or video equipment and protected under the 5th Amendment. The Defendant became aware that a Police Video was used or partially used for the above-named violations. Based on that fact the whole charges against the Defendant must be dismissed with prejudice. Justice Scalia in a US Supreme Court Decision named such areas private where governmental intrusion is illegal and unwarranted without any Warrant or Search Warrant signed by a Judge. To this date no Search Warrant or Warrant has been presented to undersigned. To this matter/ issue another points in which the action must be dismissed with prejudice.

24. It emerged that this action is in the wrong venue, the Local Joint Municipal Court of Hammonton has no Jurisdiction over Matters regarding National Parks or Pinelands. Attached is a copy of a Notice of Transfer. **Exhibit B**

Conclusion

The Defendant believes that the Joint Municipal Court of Hammonton, the Prosecutor of Hammonton, the Zoning Officer DeStefano is in the wrong "Church" Court. The Violations must be dismissed with prejudice.

Respectfully Submitted

Dated: December 26, 2025

*[signature]*

Nancy Rothman

**Certificate of Mailing**

I Nancy Rothman certifies that I have mailed on December 26, 2026, by USPS certified mail the foregoing motion and certification to dismiss the two-enforcement action with prejudice to:

To (certified mail)

| | | |
|---|---|---|
| Joint Municipal Court of Hammonton | Prosecutor Office | Mullica Township |
| 100 Central Avenue | 100 Central Avenue | Zoning Enforcement Officer |
| Hammonton, NJ, 08037 | Hammonton, NJ, 08037 | 4528 S White Horse Pike |
| | | PO Box 317, Elwood, NJ, 08037 |

Respectfully Submitted

Dated: December 26, 2025

*Nancy Rothman* (signature)

Nancy Rothman

15

# Exhibit B

Municipal Court Case Search (MCCS)　　　　　　　　　　NJCourts　Pay Ticket　MCCS

Welcome | Search |

## Complaint Detail

Back | New Search

Case: SC 2025 23693   Court: 0113   Type: Complaint   Defendant: NANCY ROTHMAN   Status: Active

### Defendant Information

Name: NANCY ROTHMAN　　　　　Gender:　　　　　Eyes:

### Court Information

Court Date: 01/22/2026　　　　Court Time: 01:00 PM　　　Court Room: VH02

### Complaint Information

Complaint Number: SC 2025 23693　　Issue Date: 08/06/2025　　Offense Date: 06/26/2025 12:00 PM　　Arrest Date:
Court: 0113 - HAMMONTON JOINT MUN COURT　　　　　　Agency & Officer ID: 0117 9998　　Police Case No:
Mun. Of Offense: 0117　　　　Co-Def Count: 0　　　　Complaint Plea: Not Guilty
Complainant: OTHER OFFICER
Transferred To:　　　　　　　　　　　　　　　　　　Transferred From:
Reason:
Status: Active　　　　　　　Time Payment:　　　　Warrant: Recalled　　　　　　Bail: Set
Last Action Date: 08/14/2025

### Charge Information

CH. 156-3A
Description: ILLEGAL TRAILER AS LIVING QUARTERS
Charge Status: Active　　　Degree: No Degree

### Additional Information

Warrant  Bail  Involved Persons

| Person/Officer | Type | Attorney ID | Agency Name |

Back | New Search

Copyright © 2012 New Jersey Judiciary

Municipal Court Case Search (MCCS)                                          NJCourts   Pay Ticket   MCCS

Welcome | Search

## Complaint Detail

[Back] [New Search]

**Case:** SC 2025 23692   **Court:** 0113   **Type:** Complaint   **Defendant:** NANCY ROTHMAN   **Status:** Active

### Defendant Information

**Name:** NANCY ROTHMAN   **Gender:**   **Eyes:**

### Court Information

**Court Date:** 01/22/2026   **Court Time:** 01:00 PM   **Court Room:** VH02

### Complaint Information

**Complaint Number:** SC 2025 23692   **Issue Date:** 08/06/2025   **Offense Date:** 08/06/2025 12:00 PM   **Arrest Date:**
**Court:** 0113 - HAMMONTON JOINT MUN COURT   **Agency & Officer ID:** 0117 9998   **Police Case No:**
**Mun. Of Offense:** 0117   **Co-Def Count:** 0   **Complaint Plea:** Not Guilty
**Complainant:** OTHER OFFICER
**Transferred To:**   **Transferred From:**
**Reason:**
**Status:** Active   **Time Payment:**   **Warrant:** Recalled   **Bail:** Set
**Last Action Date:** 08/14/2025

### Charge Information

**144-123**

**Description:** FAILURE TO OBTAIN ACCESSORY STRUCTURE PERMITS
**Charge Status:** Active   **Degree:** No Degree

### Additional Information

Warrant   Bail   Involved Persons

| Person/Officer | Type | Attorney ID | Agency Name |
|---|---|---|---|

[Back] [New Search]

Copyright © 2012 New Jersey Judiciary